# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **Christopher Lee Gamble, and** | ) | **11-80131** |
| **Erika Nicole Gamble** | ) | |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

## ORDER AND OPINION OVERRULING OBJECTION BY TRUSTEE TO CONFIRMATION OF PLAN

THIS MATTER came before the Court on May 24, 2011, after due and proper notice, for a hearing on the Objection by Trustee to Confirmation of Plan. The female Debtor appeared at the hearing along with her attorney, Koury L. Hicks. Benjamin Lovell appeared on behalf of the Chapter 13 Trustee. Having considered the objection by the Trustee, the proposed plan, the evidence offered at the hearing, and other matters of record, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure:

### BACKGROUND FACTS

The Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on January 25, 2011 (the "Petition Date"). The male Debtor is a Seafood Associate at Walmart and the female Debtor is an Admissions Administrator at Devry University. The Debtors list one dependent child, a daughter age nine. According to their B22C, the Debtors have above-median income in the amount of $5,844.12 per month and disposable income of negative $88.13 per month. In addition, on their B22C, the Debtors list a deduction in the amount of $600.00 per month for charitable contributions. On their Schedule D, the Debtors list no secured claims. On their Schedule E, the Debtors list unsecured priority claims in the amount of $13,936.38. On

their Schedule F, the Debtors list unsecured nonpriority claims in the amount of $47,737.69.

On March 30, 2011, the Debtors filed a notice of proposed Chapter 13 plan providing for monthly payments to the Chapter 13 Trustee in the amount of $241.00 for 60 months. The Debtors' plan provides for the payment of their priority debt in full and a 0% dividend to general unsecured creditors.

The Trustee filed an Objection to Confirmation of Plan on March 30, 2011. In the Objection, the Trustee stated that the Debtors' Plan should not be confirmed because the Debtors are not devoting all available monthly disposable income to unsecured creditors pursuant to 11 U.S.C. § 1325(b). The Trustee further states that the Debtors provided evidence of charitable giving in the amount of $2,055.00 for 2010, which would support an average monthly deduction of approximately $171.25, as opposed to the listed deduction of $600.00 per month on Form B22C. With projected charitable contributions calculated at $171.25 per month, the Trustee indicated that the Debtors would have approximately $340.62 per month in disposable income in Form B22C that could be devoted to general unsecured creditors.

## DISCUSSION

Charitable contributions have long since been a source of controversy for bankruptcy courts. *Compare Weinman v. The Word of Life Christian Center (In re Bloch)*, 207 B.R. 944, 948 (D. Colo. 1997) (holding that a contribution made to a religious organization by a debtor before he or she filed for bankruptcy relief can be recovered as a fraudulent transfer under 11 U.S.C. § 548 by a bankruptcy trustee because no reasonably equivalent value was received in exchange for the donation), *with Ellenberg v. Chapel Hill Harvester Church, Inc. (In re Moses)*, 59 B.R. 815, 818 (Bankr. N.D. Ga. 1986) (holding that the debtor did receive reasonably equivalent value in exchange for his religious contributions). Congress attempted to settle many of the

controversies by passing the Religious Liberty and Charitable Donation Protection Act of 1998

("the RLCDPA"). Pub. L. No. 105-183, 112 Stat. 517 (1998). The RLCDPA was intended to

"[protect] the rights of debtors to continue to make religious and charitable contributions after

they file for bankruptcy relief." H.R. Rep. No 105-556, at 2 (1998). Accordingly, the RLCDPA

amended the Bankruptcy Code in several ways:

> First, the Act amended sections 544 and 548 so as to insulate from a trustee's
> avoidance powers certain charitable contributions to qualified religious and
> charitable entities.[1] Second, the Act amended section 707(b) to restrict a court
> from considering the debtor's charitable giving in making determinations of
> dismissal for substantial abuse.[2] Third, the Act amended section 1325 to allow

---

[1] 11 U.S.C. § 544(b) now provides:
(b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of
an interest of the debtor in property or any obligation incurred by the debtor that
is voidable under applicable law by a creditor holding an unsecured claim that is
allowable under section 502 of this title or that is not allowable only under section
502(e) of this title.
(2) Paragraph (1) shall not apply to a transfer of a charitable contribution (as that
term is defined in section 548(d)(3) that is not covered under section
548(a)(1)(B), by reason of section 548(a)(2)). Any claim by any person to recover
a transferred contribution described in the preceding sentence under Federal or
State law in a Federal or State court shall be preempted by the commencement of
the case.

11 U.S.C. § 548(a)(2) now provides:
(a)(2) A transfer of a charitable contribution to a qualified religious or charitable
entity or organization shall not be considered to be a transfer covered under
paragraph (1)(B) in any case in which–
(A) the amount of that contribution does not exceed 15 percent of the gross
annual income of the debtor for the year in which the transfer of the contribution
is made; or
(B) the contribution made by a debtor exceeded the percentage amount of gross
annual income specified in subparagraph (A), if the transfer was consistent with
practices of the debtor in making charitable contributions.

[2] The statute covering dismissal for substantial abuse provides:
(b) After notice and a hearing, the court, on its own motion or on a motion by the
United States trustee, trustee (or bankruptcy administrator, if any), or any party in
interest, may dismiss a case filed by an individual debtor under this chapter whose
debts are primarily consumer debts, or, with the debtor's consent, convert such a

certain charitable expenses in the calculation of a debtor's disposable income.[3]

*In re McLaney*, 314 B.R. 228, 235-36 (Bankr. M.D. Ala. 2004). Regarding this final amendment,

as noted in one treatise, "the language appears to permit a debtor to increase contributions after

bankruptcy if the debtor would prefer to make contributions to charity rather than pay greater

amounts to unsecured creditors." Mark I. Bane et. al, Collier on Bankruptcy, ¶ 1325.08[4][b], at

1325-58 (Lawrence P. King et. al eds., 15th ed. rev. 2003) (1979).

Nonetheless, the RLCDPA did not resolve all of the issues pertaining to charitable

contributions in the bankruptcy context. Specifically, because of the absence of an amendment to

the language of 11 U.S.C. § 1325(b)(3), courts continued to hold that above-median chapter 13

debtors were not permitted to take deductions for charitable contributions when calculating

---

case to a case under chapter 11 or 13 of this title, if it finds that the granting of
relief would be a substantial abuse of the provisions of this chapter. In making a
determination whether to dismiss a case under this section, the court may not take
into consideration whether a debtor has made, or continues to make, charitable
contributions (that meet the definition of "charitable contribution") under section
548(d)(3) to any qualified religious or charitable entity or organization (as that
term is defined in section 548(d)(4)).

11 U.S.C. § 707(b).

[3] In relevant part 11 U.S.C § 1325 provides:
(2) For purposes of this subsection, "disposable income" means current monthly
income which is received by the debtor . . . less amounts reasonably necessary to
be expended–
(A)(i) for the maintenance or support of the debtor or a dependent of the debtor,
or a domestic support obligation, that first becomes payable after the date the
petition is filed; and
(ii) for charitable contributions (that meet the definition of "charitable
contribution") under section 548(d)(3) to a qualified religious or charitable entity
or organization (as defined in section 548(d)(4)) in any amount not to exceed 15
percent of the gross income of the debtor for the year in which the contributions
are made . . . .

11 U.S.C. § 1325(b)(2)(A)(i)-(ii).

disposable income. *See, e.g., In re Diagostino*, 347 B.R. 116, 119-20 (Bankr. N.D.N.Y. 2006).

As a result, Congress passed the Religious Liberty and Charitable Donation Clarification Act of

2006 (the "RLCDCA"), Pub. L. 109-439, 120 Stat. 3285 (2006), which amended the statutory

language of 11 U.S.C. § 1325(b)(3) to include the phrase "other than subparagraph (A)(ii) of

paragraph (2)," so that above-median debtors could take deductions for charitable contributions.[4]

*See In re Kolb*, 366 B.R. 802, 811 n.13 (Bankr. S.D. Ohio 2007); *In re Sorrell*, 359 B.R. 167,

178 (Bankr. S.D. Ohio 2007). Pursuant to § 1325(b)(2)(A)(ii), the amount of the deduction may

not exceed 15 percent of a debtor's gross income. Aside from this 15 percent cap, however, the

Bankruptcy Code offers little insight as to *how*, or more importantly *if*, bankruptcy courts are to

evaluate a debtor's charitable contributions when calculating disposable income.

When interpreting a statute, a court must ascertain "whether the statutory text is plain and

unambiguous." *Carcieri v. Salazar*, 129 S.Ct. 1058, 1063 (2009) (citing *United States v.*

*Gonzales*, 520 U.S. 1, 4 (1997). If the text is indeed plain and unambiguous, then the court "must

apply the statute according to its terms." *Id.* at 1063-64. Here, a review of § 1325 supports the

conclusion that bankruptcy courts are not to engage in a more thorough analysis of a debtor's

charitable contributions than what is required by the plain language of § 1325(b)(2)(A)(ii). If

---

[4] 11 U.S.C. § 1325(b)(3) now states:
Amounts reasonably necessary to be expended under paragraph (2), other than
subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with
subparagraphs (A) and (B) of section 707(b)(2) if the debtor has current monthly
income, when multiplied by 12, greater than–
(A) in the case of a debtor in a household of 1 person, the median family income
of the applicable State for 1 earner;
(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest
median family income of the applicable State for a family of the same number or
fewer individuals; or
(C) in the case of a debtor in a household exceeding 4 individuals, the highest
median income of the applicable State for a family of 4 or fewer individuals, plus
$625 per month for each individual in excess of 4.

Congress had intended for courts to consider when a debtor began making charitable contributions, then the Bankruptcy Code would have been amended to address the issue explicitly. Furthermore, the legislative history leading up to the passage of the RLCDPA clearly indicates that "[t]he bill also protects the rights of debtors who file for chapter 13 . . . to tithe or make charitable contributions." H.R. Rep. No 105-556, at 5 (1998). Thus, in evaluating the charitable contributions of an above-median debtor, the Court can only consider whether the debtor is within the 15 percent cap imposed by § 1325(b)(2)(A)(ii).

In the present case, the Debtors made charitable contributions in the amount of $2,055.00 for the year of 2010. The Debtors' Statement of Financial Affairs also indicates that they had gross income in the amount of $62,163.01 for the year of 2010. Therefore, the Debtors' charitable contributions constitute 3.3% of their gross income, meaning that they are well within the 15 percent cap.

The Trustee argues that, as the Debtors made charitable contributions in the amount of $2,055.00 for 2010, the Court should limit the Debtors' future charitable contributions to $171.25 per month. The Trustee does not refute that the Debtors are now making contributions in the amount of $600.00 per month, but instead argues that such an increase in charitable contributions is impermissible. To support his argument, the Trustee relies on *In re Bender*, 373 B.R. 25 (Bankr. E.D. Mich. 2007), a case in which the court granted the Trustee's Motion to Dismiss pursuant to § 707(b)(3) because of, among other things, the Debtors' $360.00 per month post-petition increase in charitable contributions. While the facts of *Bender* maybe somewhat analogous to that of the present case, the Court does not find the case to be persuasive. In *Bender*, the court was primarily concerned that the Debtors were attempting to lower their disposable income in an effort to appear as if they could not fund a hypothetical chapter 13 plan.

*Id.* at 29-30. Despite listing no secured claims on Schedule D, the Debtors here have voluntarily filed a chapter 13 case. Thus, any concern that the Court may have regarding the Debtors' intentions to avoid entering into a chapter 13 plan is nullified.

## CONCLUSION

For the foregoing reasons, the Objection by Trustee to Confirmation of Plan is OVERRULED. Furthermore, the Trustee shall conduct an annual review of the Debtors' plan to determine if the Debtors are still making charitable contributions in the amount of $600.00 per month. If appropriate, the Trustee shall file a Motion to Modify the Plan so that the amount of the plan payments and the dividend to unsecured creditors accurately reflect the amount of the Debtors' disposable income.

SO ORDERED.

# SERVICE LIST

Christopher Lee Gamble
Erika Nicole Gamble
Debtors

Edward C. Boltz
Koury Hicks
Attorney for Debtor

Richard M. Hutson, II
Trustee